The case on today's docket is the case of Pueblo State of Illinois v. Robert Glass. We have Kelly Stacey for the appellant and we have Susan Berger for the athlete. You may begin on your approach. Prepare to, Ms. Stacey. Thank you, Your Honor. Your Honor's counsel is in support. My name is Kelly Stacey, appearing on behalf of the people. Most often when I'm here before this court, I'm asking the court to affirm the judgment of the trial court. But today is different. Today I'm asking this court to reverse the order of the circuit court suppressing the defendant's confession and to remand the matter for further proceedings. In July of last year, the defendant filed a motion to suppress his confession of molesting his daughter, alleging that it was made without random warnings while he was the subject of custodial interrogation. He argued that he confessed to people whose job it is to investigate and instigate charges. But if that's the case, every time anyone confesses, that's the situation you'd be faced with. It's always a police officer who winds up taking a confession unless it's some sort of an admission against interest. The law in this case is very clear. If a defendant is not in custody at the time his statements are made, he is simply not entitled to receive random warnings. In the trial court, the judge decided to bypass that very important legal issue, whether the defendant was in custody at all. He didn't even make that ruling, either explicitly or apparently implicitly. Didn't he state that the court finds that the defendant could have reasonably believed that he was in custody? I believe that's exactly what the trial court stated, was that in this case the defendant could have reasonably believed he was in custody. But that's not the proper legal standard. The court's decision in that regard is faulty and unsound, and it must be reversed. Miranda only applies in cases where a person has been taken into custody. There must be a finding that he's in custody, and that involves necessarily an objective determination. It's similar to the cases where a defendant is arguing he has a reasonable expectation of privacy, where there is a subjective component. Did he reasonably believe he was in custody? Did he believe he had a reasonable expectation of privacy? The second part is, is that belief that the society is willing to recognize. Very similar to what you have here. It's not inherently improper for the trial court to say, well, did he reasonably believe he was in custody? And the Griffin case relied upon by the defendant talks about that. They talk about that subjective component, and they talk about it in the sense of in order to get past the initial question of whether suppression is warranted, the defendant has to show at least he thought he was in custody. But that's not the end of the decision. That's not the end of the inquiry that the court is required to make. The court seemed to face a lot of emphasis on perhaps his limited intellectual ability to understand what the circumstances were. What testimony was put forth with respect to him and his learning disabilities or whatever the court considered? I would point out it was never raised in the motion to suppress. It was in the memorandum of law that was argued to the court. And the testimony to my recollection from the record was that the defendant testified on his own behalf that he took special education classes in high school. We do know he received a C average and that he did, in fact, receive his high school diploma. In the Griffin case, there was testimony of the psychologist, I believe it was a psychologist, Dr. House, who testified that in that case the defendant had a 70 IQ, which is a borderline intellectual functioning range. But there was no evidence of him having impaired intellect other than his own self-reporting that he had had some special ed classes. That's correct. And I guess you had some kind of high school transcript that showed he had a C average? I believe it was his testimony only. And he got an actual certificate of graduation. I believe that is correct. The other issue that I pointed out in the brief is I'm not an over-the-road truck driver, but I do know people who are. And in order to get a commercial driver's license, you have to at least be able to take the test, a written test. You have to be able to show up and drive a commercial vehicle and show that you can drive that to the satisfaction of the person who's doing the testing. The other component is he's driving all over the continental United States. He filed a motion to modify bond to allow him to leave the state of Illinois. So he's traveling around, presumably by himself, in this big rig, and I believe that's an indication that he really isn't intellectually impaired. The other thing I would point out is in the case of People v. Braggs, there's been a lot of Supreme Court activity about what is an officer on the street supposed to know when he prepares to interview someone. And unless there's some outward sign of an intellectual impairment, the onus is not placed on the officer to presume somebody is intellectually impaired. And in this case, if you look at the questioning that went on with Sergeant Chad Brown and the defendant, there's no indication at all that would lead him, lead Officer Brown, to believe there was any sort of intellectual impairment of the defendant at all. I believe that's one of the areas that the court improperly placed its emphasis. And the other area was the subjective belief of the defendant, which was post-arrest and post-indictment, that, oh, well, I believed I was in custody because a police officer was there. The defendant in this case was never in custody. I don't believe that that's anything that could be reasonably concluded from the record. The trial court erred in skirting around that issue of custody. Would it ever be relevant what the defendant believed, whether or not he believed he was in custody or not? In most of the cases, Your Honor, that I read, it didn't seem to be that big of a factor. Would it ever be relevant? Oh, I'm sorry. Would it be relevant? If you look at that Griffin case out of Fourth District, it was apparently relevant in that case, only to the extent that in order to get past the suppression issue, you can't very well file a motion to suppress and then come in and say, oh, I never really believed I was in custody anyway. You're defeating the purpose of filing the motion to suppress because your confession is only going to be suppressed if you weren't Mirandized and you were supposed to be. In this case, there was never any requirement for the defendant to be Mirandized because he was never in custody. And in looking at where this interview occurred, it was at the DCFS office. It was at a time that was convenient to the defendant. It was scheduled initially, and then the defendant was unable to make that time. So the DCFS investigator said, well, come back at this time. It wasn't done in a police station. There was one officer present. No one ever displayed a weapon, used force, or even threatened to use force. It looked like a collegial-type interview. The defendant was never booked or fingerprinted. He was never placed in handcuffs or arrested. He wasn't arrested until almost four months after this interview took place. The defendant claims the trial court's ruling is not wrong because it doesn't have to use those words, in custody, and that its ruling is presumptively correct. I would point out that the Illinois Supreme Court disagrees, and in the Slater case, the court stated, it is readily apparent from a review of the trial court's ruling that it failed to specifically resolve the threshold legal issue of whether the defendant was in custody. I'm sorry, finish your thought. I was going to say this is the same error committed by the trial court below. There was never that threshold determination. The court, after it says it looked at the nine factors, then it talks about his intellect, then it says that it further notes that the questioning was not a general on the scene. In other words, it looked like it was an investigation of a crime. Tell me what you think. What do you think about that, that the court honed in on that? I believe that that compounds the error in this case, that the court determining that it was a fact-finding process instead of general on the scene questioning. I don't really quite understand the difference in that, other than the fact that if an officer arrives on the scene, that there's something readily apparent to him. But here, the officer received a call from Charlene Necco, the PCFS investigator. But this court, in particular, in People v. Acoff in 1989, held that questioning alone does not require memorandum warnings, even where the person being questioned is one that the police suspect committed the crime. The United States Supreme Court has held our decisions make clear that the initial determination of custody depends on the objective circumstances of the interrogation, not on the subject of views harbored by either the interrogating officers or the person being questioned. That's in Stansberry v. California in 1984. The defendant, again, argues on appeal that it is presumed that the trial court heard sufficient evidence to support its decision. In this case, this could not be further from the truth. Under the required de novo review, it is clear the trial court's ruling is in error, and its ultimate ruling suppressing the evidence reveals that it is contrary to law and is therefore not entitled to deference upon review and should be reversed. The defendant was not in custody when he confessed. Miranda warnings were not required. The people respectfully request this court reverse the order suppressing the defendant's confession and remand the matter for further proceedings on the charges that the defendant sexually abused his daughter. Thank you, Your Honors. Thank you. I'll yield the opportunity to rebut and further. Good afternoon, judges. Good afternoon. May it please the court. If you will note, this is a very, very short transcript, only about 60 pages, and consequently my brief is very short and so will my argument be. I think the main problem with this state's position is that the Griffin case noted that all the defendant has to do in the motion to suppress is meet the burden of production, and that burden is, of course, to show that the defendant believes that he was in custody. But once that is done, it is the state's burden of proof, and I think that is really the problem here. The state did not meet its burden to show that this really was a non-custodial interrogation. And I believe it's in the Griffin case that the court even goes so far as to say to the police, you know, if you really don't want to run that risk, maybe you should be looking at doing your investigations not in a police department, but in a Burger King or a park or even the defendant's residence. And as we know, there have been many interrogations that have been in residences. But a DCFS office is what they chose, and they chose this because as the investigator Charlene Necco admitted, that's the way they do things there. When they gather statements from a child and they believe something's happened, they contact either the local police or the state police. Wouldn't it be inappropriate to have that type of conversation at a Burger King? Regarding an alleged sexual molestation? It seems much more appropriate to me to have it in a DCFS office. Well, in a way, but my point is, Judge, that a DCFS office, I don't know what your experience in private practice has been, but I've been in many, and they are just as miserable and bleak as a police station. In this particular case, the defendant was placed in an 8x10 room. Chad Brown tried to make the room bigger, but the person who was really familiar with the office, who would have been Charlene Necco, the investigator, said it was only 8x10. It was closed to the public, just like a police interrogation office would have been. And the only people going in and out were Charlene to answer the phone call, and, of course, the defendant was told, allegedly, that he was free to leave. He did leave, didn't he? He was off for four months, right? Yes. He didn't get up and leave during the interview, but he left after the interview. Correct. He was not arrested on that day. Do you agree that Acoff is pretty clear that there's no duty to give Miranda, any time you're asking a suspect questions, even if they're the focus of the investigation? Well, in this case, Judge, I think the problem is that the officer's claims that he kept saying that were not supported by the other evidence. Charlene Necco wasn't really clear about what he said. The defendant didn't remember that, and although there was a recording, the recording was made after the first interview. And on that recording, the state police officer testified that it was on there, but, in fact, it was on the end, buried in nine sentences. And at the end of all these questions, the defendant says, yeah. So it kind of sounded, well, let me just throw this in to cover myself in case I get in trouble here with someone saying that this is a situation where Miranda should have been required. But in any event, the state had the burden of proof. I don't think they met that proof. And, of course, the trial court's judgment is entitled to great deference here. I think that there was some suggestion that the judge put undue influence on the defendant's intellect or lack of it. Well, the only reason why I mention that is that the court says that he considered the nine factors and then highlights that and also highlighted that point as well as what was the second point the judge highlighted? I didn't see it. It doesn't appear to be highlighted in the copy I have. No, I meant to highlight it by pointing it out. That's all I meant. He says that he considered the other factors and that he was taking into consideration the defendant's intellect and further noting that it was not a general on-the-scene question of fact. I mean, to me, that makes it appear that he was highlighting, emphasizing. I see what you're saying. I just thought he did that in that he was very thorough and listed all of the possible factors, and, you know, that was number nine, so he worded it that way. Do you agree that the court's statement that the defendant could have reasonably believed he was in custody is not the standard? I agree that that's not the standard, Judge, but I also would ask you to look at the Griffin case where it points out that usually it's not even argued on that particular point because once the defendant meets that initial burden, then it's just assumed. And then after that, it's, you know, what would a reasonable person believe? Would he believe he was free to leave? And I believe under the factors that this case was decided under, the defendant rightly believed he was not free to leave, in part perhaps because of his intellect, but certainly because of the way this investigation was done. Although he drove, he was driven to the DCFS office. He was told to come, and he went there, and immediately when he got there, the state police officer was there. If it had just been a DCFS investigation without the threat of criminal charges, I don't think the state police would have been there. But in any event, the trial judge is entitled to be sustained on appeal, and I would ask that you do that. Thank you, Ms. Berger. Ms. Stacy, do you have a fair briefing? It is clear that counsel relies very heavily on the Fourth District Griffin case, so I thought I would take this opportunity to point out some differences between Griffin and the instant case. The Griffin case is about as factually dissimilar to this case as you can get. In the Griffin case, the defendant was interviewed at a police station. Here, although the defendant may not like it now, the interview took place at a DCFS office. In the Griffin case, the defendant was interviewed at the convenience of the police officers. They showed up at her house. After they had already interviewed her at a hospital, it was a case of an infant being suffocated, and the infant subsequently died. After the infant died, the officer thought, I'm going to go ahead and take this opportunity to interview Ms. Griffin again, went to her house, said, can you go ahead and come with me to the police station? She went. Her father went with her. In that case, the police officers drove her to the police station. The defendant asked if her dad could sit in on the interview, the interrogation, and the police refused. In this case, there is evidence that the defendant's wife went with him to the interview, but there's no evidence whatsoever that he ever asked for her to be able to sit in on the interview. The defendant in Griffin was told she was not under arrest and that she was free to leave at any time, but the arresting officer himself testified in that case that she was really not free to leave. She wasn't free to roam around the police station, and that was not going to be allowed. In the Griffin case, there were always two or more police officers present, and lastly in Griffin, officers exhorted, enticed, and cajoled the defendant until they received the answers they were seeking. The circumstances in that Griffin case are wholly unlike the circumstances surrounding this interrogation. I would also like to quote for this court from Yarbrough v. Alvarado, the U.S. Supreme Court decision. Two discreet inquiries are essential to the determination of custody. First, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave? Once the scene is set and the player's lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry. Was there a formal arrest or restraint on freedom of movement of the degree associated with the formal arrest? Here, there decidedly was not. Was the issue of question first, warn later phrase presented to trial judge? I believe that that was a big part of the argument made at the trial court level was this question first, warn later. But I would point out for the court, if it's a question first, warn later issue, then obviously the random warnings have to come in somewhere. And on page 13 of the defendant's brief, it says that no time before, during, or at the conclusion of the interview did either the investigator Neko, or Niko, however it's pronounced, or Sergeant Brown ever read defendant the warnings required by Miranda. The reason the warnings weren't read is the defendant was not in custody. Absent a custodial interrogation, Miranda warnings are not required. In this case, the trial court simply got it wrong. This case needs to go back, and the people respectfully urge this court to reverse and remand, let it get past an issue of suppression, and go into a trial of the defendant's choosing, jury or bench. But it needs to get past this whole suppression issue. Suppression certainly was not warranted in this case, and there's no indication whatsoever that the confession was anything but voluntary. Thank you, Your Honors. Thank you. Thank you both for your arguments and briefs, and we'll take them under revisement.